UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHELLE TRANQUILLO et al., <br>    *Plaintiffs*, <br><br> v. <br><br> GENERAL ELECTRIC CO. et al., <br>    *Defendants*. | 3:25-CV-1339 (SVN) <br><br><br><br><br><br> March 5, 2026 |

### RULING AND ORDER ON PLAINTIFFS' MOTION TO REMAND

Sarala V. Nagala, United States District Judge.

      Plaintiffs Michelle and Louis Tranquillo initiated this action in Connecticut Superior Court against four companies alleged to have produced, manufactured, and distributed asbestos and/or asbestos products—General Electric Co. ("GE"), Metropolitan Life Insurance Company ("Met Life"), Sporting Goods Property, Inc. ("Sporting Goods"), and Union Carbide Corporation ("Union Carbide," together "Defendants"). Plaintiffs allege Mrs. Tranquillo was exposed to asbestos-containing products through environmental exposure and possible take-home exposure, resulting in illness.[1] Plaintiffs allege various state law claims, including products liability, recklessness, "environmental exposure," and loss of consortium. ECF No. 1-1.

      GE removed the action to federal court. Not. of Removal, ECF No. 1. While Sporting Goods and Union Carbide consented to removal, Met Life did not. Plaintiffs filed the present motion to remand the action back to Connecticut Superior Court, contending that removal was

---

[1] As the state court complaint almost exclusively uses the word "plaintiff" in singular form, it is not clear whether both Plaintiffs are alleged to have suffered asbestos-related illness. *See generally* Compl., ECF No. 1-1. Plaintiffs' motion for remand appears to clarify that Mrs. Tranquillo was diagnosed with mesothelioma caused by exposure to asbestos products. Pls.' Mot. to Remand, ECF No. 28–1 at 1. At oral argument on the present motion, Plaintiffs' counsel clarified that Plaintiffs allege Mrs. Tranquillo was exposed through the presence of asbestos in the environment, as opposed to being exposed through her employment (despite that the complaint mentions employment as a potential cause). *See* Mot. to Remand Oral Arg. Tr., ECF No. 55 at 6–7. Plaintiffs' counsel also clarified that they were investigating a take-home exposure claim for Mrs. Tranquillo based on Mr. Tranquillo's work at the Sikorsky factory in Connecticut, and "that [was] part of the allegation in the complaint," but "whether that ultimately bears out in discovery remains to be seen." *Id.*

improper because the "rule of unanimity"—requiring that all properly-served Defendants consent to removal—was not met. ECF No. 28. GE opposes the motion, arguing that Met Life was fraudulently joined and this Court otherwise has subject matter jurisdiction, as all parties are diverse and the amount in controversy exceeds $75,000. For the following reasons, the Court DENIES Plaintiffs' motion to remand. This case shall remain in federal court.

I. FACTUAL BACKGROUND

A. The State Court Complaint

The state court complaint contains the following relevant allegations. Plaintiffs are both citizens of Connecticut. ECF No. 1-1 ¶¶ 1–2. Plaintiffs allege Defendants "conducted business in the state of Connecticut," and were involved in the "business of contracting for, mining, milling, processing, manufacturing, designing, testing, assembling, fashioning, fabricating, packaging supplying, distributing, delivering, marketing, and/or selling asbestos and asbestos products." *Id.* ¶¶ 3, 9.

Mrs. Tranquillo alleges that she was exposed to various asbestos-containing products "secondarily through her husband's employment and environmentally," *id.* ¶ 5, and that through this exposure, she "was exposed to and did inhale and/or ingest asbestos dust, fibers, and particles" from Defendants' asbestos products. *Id.* ¶ 6. As a result, Plaintiffs allege Mrs. Tranquillo contracted "mesothelioma and other asbestos-related pathologies." *Id.* ¶ 5.

Plaintiffs allege four counts: a product liability claim pursuant to the Connecticut Product Liability Act ("CPLA"), Conn. Gen. Stat. § 52-572m, *et seq.* against GE and Met Life; a common law recklessness claim against all Defendants; an "environmental exposure" claim against GE and Sporting Goods; and a loss of consortium claim on behalf of Mr. Tranquillo against all Defendants. ECF No. 1-1 at 6–17.

2

B. <u>Procedural History</u>

Plaintiffs filed their complaint with the Connecticut Superior Court in Bridgeport on July 9, 2025. *See id.* at 6. Service was returned as to all Defendants on August 4, 2025. *See Michelle Tranquillo et al v. General Electric Co. et al.*, FBT-CV25-6148536-S, Dkt. No. 101.00. On August 19, 2025, Defendant Met Life filed its answer and special defenses to Plaintiffs' complaint in state court. *Id.*, Dkt. No. 103.00; *see also* Met Life Answer, ECF No. 1-1 at 27–130. No other Defendants answered or otherwise responded to Plaintiffs' complaint in state court.

On August 20, 2025, GE timely removed the action to federal court, asserting diversity jurisdiction. ECF No. 1. It is undisputed that there is complete diversity of citizenship between Plaintiffs and all Defendants, including Met Life, for purposes of 28 U.S.C. § 1332(a).[2] *Id.* at 3. As noted above, only three of the four Defendants—GE, Sporting Goods, and Union Carbide— consented to removal: Met Life did not consent. *See id* at 2; Email Corr., Ex. B, ECF No. 1-2 at 2–3; Met Life Email Corr., ECF No. 1-3 at 2.

GE contends that Met Life's lack of consent should be ignored because it is fraudulently joined. ECF No. 1 at 3–8. Plaintiffs promptly filed the present motion to remand the action back to Connecticut Superior Court, contending that Met Life is not fraudulently joined and that this case properly belongs in state court. Following oral argument on Plaintiffs' motion to remand, the Court ordered concurrent supplemental briefing on whether fraudulent joinder doctrine applies when it is the rule of unanimity, as opposed to complete diversity, that is not satisfied by the addition of a particular defendant. *See* Pls. Supp. Brief, ECF No. 53; Defs.' Supp. Brief, ECF No. 54.

---

[2] Plaintiffs are citizens of Connecticut; GE is a citizen of New York and Ohio; Met Life is a citizen of New York; Sporting Goods is a citizen of Delaware and Indiana; and Union Carbide is a citizen of New York and Texas. *See* ECF No. 1 at 3–4; ECF No. 1-1 ¶¶ 1–2.

## II. LEGAL STANDARD

Under 28 U.S.C. § 1441(a), a defendant may remove any civil action brought in state court over which the federal district court has original jurisdiction. Relevant here, federal district courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). "The Supreme Court has interpreted 'citizens of different States' to grant jurisdiction only 'if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State.'" *Platinum-Montaur Life Scis., LLC v. Navidea Biopharms., Inc.*, 943 F.3d 613, 617 (2d Cir. 2019) (quoting *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998)).

In addition to the subject matter jurisdiction requirement, the federal removal statute imposes various procedural requirements; if those requirements are not met, a plaintiff can move to remand the action back to state court within thirty days after the notice of removal is filed in the district court. 28 U.S.C. §§ 1441, 1447(c). Among these requirements is the "rule of unanimity," which requires that within thirty days of receipt of the initial state court pleading or summons, whichever is shorter, "all defendants who have been properly joined and served" in an action must "join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A); *Taylor v. Medtronic, Inc.*, 15 F.4th 148, 150 (2d Cir. 2021). The rule of unanimity, which was codified by Congress in 2011 after existing in the common law, "serves the interests of plaintiffs, defendants, and the courts." *Taylor*, 15 F.4th at 150. Specifically, it "benefits plaintiffs by preventing defendants from splitting the litigation, forcing the plaintiff to pursue the case in two separate forums. It benefits defendants by precluding one defendant from imposing its forum choice on codefendants. And it helps courts by preventing needless duplication of litigation." *Id.* (quoting 16 Moore's Fed. Prac.

- Civil § 107.42 (2018)). Each defendant must individually express its consent to removal. *Pietrangelo v. Alvas Corp.*, 686 F.3d 62, 66 (2d Cir. 2012) (*per curiam*).

Because statutory requirements for removal are to be strictly construed, federal courts construe the removal statute narrowly, resolving any doubts against removability. *Taylor*, 15 F.4th at 150 (quoting *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007)). The removing party bears the burden of showing that federal jurisdiction is proper. *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 327 (2d Cir. 2011).

## III. DISCUSSION

Plaintiffs have moved to remand this action to Connecticut Superior Court for failure to comply with the rule of unanimity, given Met Life's refusal to consent to removal. GE contends that Met Life's refusal to consent should be disregarded, as it was fraudulently joined to the suit by Plaintiffs.

As discussed below, the doctrine of fraudulent joinder is typically invoked when the addition of a defendant would defeat complete diversity. Although the Second Circuit has not opined on whether the doctrine would apply when only the failure to comply with the rule of unanimity is at issue, the Court believes that it would apply in this circumstance. The Court thus proceeds to analyze whether Met Life was fraudulently joined, and concludes that it was, because the current complaint contains no possibly valid claim against Met Life. Thus, Met Life's consent was not required for removal, and Plaintiffs' motion to remand is denied.

### A. Rule of Unanimity

To start, it is clear that the rule of unanimity has not been satisfied here. To remove an action to federal court, each properly joined defendant must consent to removal within the statutorily allotted thirty-day period. *See Pietrangelo*, 686 F.3d at 66; 28 U.S.C. § 1446(b)(2)(A). The parties agree that Defendant Met Life affirmatively declined to consent to removal, and its

thirty-day window to reverse this position has passed.  *See* ECF No. 1 ¶ 7; 28 U.S.C. § 1446(b)(2)(A).  Thus, the rule of unanimity is not satisfied, if indeed Met Life was "properly joined."[3]

### B. Fraudulent Joinder

#### 1. *Applicability of the Fraudulent Joinder Doctrine*

"Fraudulent joinder is a 'legal term of art [used] to refer to the joinder of unnecessary or nominal parties in order to defeat federal jurisdiction.'" *Kuperstein v. Hoffman-Laroche, Inc.*, 457 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (quoting *Nosonowitz v. Allegheny Beverage Corp.*, 463 F. Supp. 162, 163 (S.D.N.Y. 1978)).  The doctrine is typically invoked to prevent a plaintiff from defeating federal court diversity jurisdiction "by improperly joining as a defendant a non-diverse party with no real connection to the controversy."  *Bounds v. Pine Belt Mental Health Care Res.*, 593 F.3d 209, 215 (2d Cir. 2010); *see also See Brown v. Eli Lilly & Co.*, 654 F.3d 347, 356 (2d Cir. 2011).  In a case of fraudulent joinder, courts "overlook the presence of a non-diverse defendant if from the pleadings there is no possibility that the claims against that defendant could be asserted in state court."  *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004); *accord Bounds*, 593 F.3d at 215.  Here, it is undisputed that Plaintiff's addition of Met Life as a defendant does not defeat complete diversity; instead, GE suggests that Met Life was fraudulently joined to defeat the rule of unanimity.  Thus, the initial question for the Court is

---

[3] While the Second Circuit has not explicitly stated what form consent to removal must take, *see Pietrangelo*, 686 F.3d at 66, district courts in this circuit have typically required the consenting defendants to sign the notice of removal or "subsequently provide the Court with their unambiguous written consent" to removal.  *Gibson v. Dolliver*, No. 3:18-CV-01825 (JCH), 2019 WL 1455172, at *3 (D. Conn. Apr. 2, 2019) (quoting *Metro. Transp. Auth. v. U.S. Fid. & Guar. Co.*, No. 14-CV-9059 (PAE), 2015 WL 1730067, at *4 (S.D.N.Y. Apr. 14, 2015) and collecting cases); *see also Nat'l. Waste Assoc., LLC v. TD Bank, N.A.*, No. 3:10-CV-289 (CSH), 2010 WL 1931031, at *4 (May 12, 2010) ("[e]ach and every defendant must submit some form of written consent to the court within the applicable thirty-day period set forth in 28 U.S.C. § 1446(b)").  Here, Defendants Sporting Goods and Union Carbide advised GE of their consent via email, which GE then attached as an exhibit to its notice of removal.  Although the safer practice would be for the consenting Defendants to sign the notice of removal, the Court considers the emails to be the unambiguous written consent that is required.

whether the doctrine of fraudulent joinder applies when the rule of unanimity, as opposed to diversity jurisdiction, is at issue.

For the reasons below, the Court believes it is appropriate to apply the fraudulent joinder doctrine in the context of the rule of unanimity. To start, the language of the removal statute setting forth the rule of unanimity requires consideration of whether a non-consenting defendant was "properly joined" in the suit. *See* 28 U.S.C. § 1446(b)(2)(A) ("When a civil action is removed solely under section 1441(a), all defendants who have been *properly joined* and served must join in or consent to the removal of the action.") (emphasis added); *see also Gov't Employees Ins. Co v. Saco*, Nos. 12-CV-5633 (NGG) (MDG), 15-CV-634 (NGG) (MDG), 2015 WL 4656512, at *5 n.8 (E.D.N.Y. Aug. 5, 2015) (rejecting request for remand based on failure to comply with the rule of unanimity and noting that "[t]he very language of the statute exempts defendants who have been improperly joined"). And the doctrine to which courts typically look in determining whether a defendant has been added to a suit purposefully to defeat federal jurisdiction is that of fraudulent joinder.

The majority of Second Circuit cases the Court has reviewed have applied the fraudulent joinder doctrine to situations where a plaintiff added a non-diverse defendant that defeated otherwise-complete diversity. *See, e.g.*, *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460–61 (2d Cir. 1998); *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001); *Brown*, 654 F.3d at 356 ("[a] plaintiff may not defeat diversity jurisdiction by improperly joining a *non-diverse* defendant with no genuine connection to the matter") (emphasis added); *Bounds*, 593 F.3d at 215 ([t]he doctrine of fraudulent joinder is meant to prevent plaintiffs from joining non-diverse parties *in an effort to defeat federal jurisdiction*") (emphasis added).

But the Second Circuit has never explicitly eschewed application of the fraudulent joinder doctrine beyond those circumstances, as some out-of-circuit district courts have done.[4] *See Gipson v. State Farm Mut. Auto. Ins. Co.*, No. 08-2300 (GBC), 2008 WL 11319733, at *2 (W.D. Tenn. Dec. 2, 2008) (declining to apply fraudulent joinder where diverse, non-consenting defendant was sued because fraudulent joinder "is a judicially created doctrine that provides *an exception to the requirement of complete diversity*") (emphasis in original; citing *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999)); *H&K Int'l, Inc. v. F&M Installations Corp.*, No. 22-CV-2278-S, 2023 WL 1452065, at *2 (N.D. Tex. Jan. 31, 2023) (noting that "multiple courts in the Fifth Circuit have determined that improper joinder cannot excuse a defendant's failure to obtain consent where the Court's subject-matter jurisdiction is not in question" and collecting cases).

Other circuits have recognized a fraudulent joinder exception to the rule of unanimity. *See Balazik v. Cnty. of Dauphin*, 44 F.3d 209, 213 n.4 (3d Cir. 1995) (recognizing in *dicta* that the rule of unanimity may be disregarded where a non-consenting defendant is a nominal party or is fraudulently joined); *Rico v. Flores*, 481 F.3d 234, 239 (5th Cir. 2007); *Couzens v. Donohue*, 854 F.3d 508, 513 (8th Cir. 2017); *United Comp. Sys, Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002). And at least one district court within the Second Circuit has held that fraudulent joinder doctrine is an exception to the rule of unanimity. *See Sherman v. A.J. Pegno Const. Corp.*, 528 F. Supp. 2d 320, 330 (S.D.N.Y. 2007) ("[t]here are exceptions to this rule [of unanimity] for . . . fraudulently joined defendants"). Likewise, a leading treatise suggests improperly or fraudulently joined defendants need not consent to removal. *See* 16 Moore's Fed. Prac. - Civil § 107.42[3][c]

---

[4] GE cites to in-circuit opinions for the proposition that "a court may disregard the citizenship of a non-diverse defendant, *or the lack of unanimity created by a non-consenting defendant*, if such defendant has been fraudulently joined to the action." ECF No. 41 at 10 (emphasis added). While the first part of this argument appears well-established in Second Circuit cases, the italicized portion is, at best, an extension of those cases to the situation where a defendant's addition will not destroy diversity, but results in non-unanimity with respect to consent to removal.

(2026) ("Although generally all defendants must join in the notice of removal, defendants who were improperly or fraudulently joined to prevent removal need not join.") (parenthetical omitted).

Additionally, both parties cite to cases where fraudulent joinder doctrine was applied in cases removed to federal court pursuant to federal question jurisdiction under 28 U.S.C. § 1331, not diversity jurisdiction—lending further support to the idea that fraudulent joinder doctrine can apply outside of the context of destroying complete diversity. *See* ECF No. 53 at 4–5 (citing *Breitling v. LNV Corp.*, 86 F. Supp. 3d 564, 567, 571–72 (N.D. Tex. 2015) and *Simpson v. Union Pacific R.R.*, 282 F. Supp. 2d 1151, 1153 n.2, 1156 (N.D. Cal. 2003)); ECF No. 54 at 9 (citing *In re Pharm. Indus. Average Wholesale Price Litig.*, 431 F. Supp. 2d 109, 118 (D. Mass. 2006) and *Simmons v. State of Cal., Dep't of Indus. Rels., Div. of Lab. Standards Enf't*, 740 F. Supp. 781, 786 (E.D. Cal. 1990), *overruled on other grounds*, *Kreuse v. State of Hawai'i*, 68 F.3d 331, 334 (9th Cir. 1995)). As explained in *Simmons*, there are situations where a party (or claim) could be fraudulently joined to destroy federal question jurisdiction, so it is appropriate to apply the doctrine even when diversity jurisdiction is not at issue. *Simmons*, 740 F. Supp. at 786–87; *see also Diaz v. Kaplan Univ.*, 567 F. Supp. 2d 1394, 1402 n.28 (S.D. Fla. 2008) (recognizing that "the rationale for the doctrine of fraudulent joinder applies with equal force in the context of removal based on federal question jurisdiction").

For these reasons, the Court concludes that it is appropriate to apply the fraudulent joinder framework here to assess whether Met Life is properly joined in this action, such that its consent would be necessary to satisfy the rule of unanimity.

### 2. Analysis

The Court concludes that Met Life was not properly joined in this action.

Generally, to demonstrate that a party is fraudulently joined, "the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed

9

in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia*, 138 F.3d at 461.[5] The fraudulent joinder standard is strict and is not satisfied by simply showing that the complaint fails to state a claim. *Mihok v. Medtronic, Inc.*, 119 F. Supp. 3d 22, 34–35 (D. Conn. 2015) (citing cases). Rather, the analysis turns "on whether the claim is objectively frivolous." *Soto v. Bushmaster Firearms Int'l, LLC*, 139 F. Supp. 3d. 560, 563 (D. Conn. 2015).

Some out-of-circuit district courts have also adopted a third test: whether there is sufficient evidence to support "an allegation of collusion between the plaintiff and the non-consenting defendant." *Hauck v. Borg Warner Corp.*, No. 6:04-CV-1835 (ORL) 28DAB, 2006 WL 2927559, at *6 (M.D. Fla. Oct. 12, 2006) (declining to find evidence of collusion and subsequently conducting traditional fraudulent joinder analysis); *Diaz*, 567 F. Supp. 2d at 1403; *see also In re Pharm. Industry Average Wholesale Price Litig.*, 431 F. Supp. 2d at 119; *In re Diet Drugs Products Liability Litig.*, 220 F. Supp. 2d 414, 421–22 (E.D. Pa. 2002) (applying fraudulent joinder doctrine and describing evidence of alleged agreements between plaintiffs and groups of defendants to name those defendants because they would not consent to removal, but then ultimately dismiss them from the litigation).

Here, the Court concludes that there is insufficient evidence of collusion. Under a traditional fraudulent joinder analysis, however, it is clear that Met Life was improperly joined because the complaint does not state a non-frivolous claim against it, and its lack of consent to removal will therefore be disregarded.

---

[5] The Supreme Court recently noted that when the fraudulent joinder doctrine is applied "where there are no allegations of fraud," it is referred to more generally as "improper joinder." *Hain Celestial Grp., Inc. v. Palmquist*, 607 U.S. 4 n.1 (2026).

a. Collusion

First, to the extent that a collusion test is applicable, the Court holds that GE has not sufficiently demonstrated collusion as between Plaintiffs and Met Life. In its original opposition to Plaintiffs' motion to remand, GE asserted collusion, suggesting that "Plaintiffs have deliberately joined [Met Life] as a defendant, knowing that it withholds consent for any federal court removal in all asbestos litigation cases." ECF No. 41 at 7; Decl. of Catherine A. Mohan, ECF No. 41-3 at 1–2. GE's supplemental fraudulent joinder briefing further develops this theory, alleging that Met Life's "highly unusual" practice of failing to meaningfully participate in asbestos litigation "suggests that MetLife has some form of a cooperation agreement with Plaintiffs' counsel." ECF No. 54 at 14. But nowhere in its pleadings does GE provide any evidence that Plaintiffs knew of Met Life's alleged practice of declining to consent to removal, much less that Plaintiffs acted deliberately based on such knowledge to join Met Life based on such a practice.

Attorney Mohan's affidavit states that "Met Life, as a co-defendant, does not meaningfully contest liability" in the "hundreds" of asbestos cases she has litigated where Met Life was a named defendant, and attests that she has observed "a clear, repeated pattern and practice" in Met Life's litigation practices in these matters, whereby it immediately files an answer, witness and exhibits lists, and expert reports, but does not otherwise participate in discovery. ECF No. 41-3 at 2. Critically, however, Attorney Mohan does not suggest that Met Life is quickly dismissed from lawsuits, such that collusion could potentially be inferred. *See In re Diet Drugs Products Liability Litig.*, 220 F. Supp. 2d at 421–22. And Attorney Mohan's observations appear to relate to Met Life's practices across its asbestos litigation *generally*, not cases involving solely Plaintiffs or their counsel. Attorney Mohan does not state, for instance, that Plaintiffs' counsel has been involved

11

in all or nearly all of the cases where she has observed Met Life's alleged litigation tactics.[6] The fact that Met Life may have a uniform policy for how it chooses to litigate asbestos cases works against GE's argument that Plaintiffs or their counsel have colluded with Met Life to join it in litigation, knowing Met Life would refuse to consent to removal. GE's argument—taken to its logical conclusion—would mean Met Life would be colluding with *all* Plaintiffs or their counsel who sue Met Life in asbestos suits. Thus, the Court finds that GE has not sufficiently alleged collusion between Plaintiffs and Met Life.

      b. Actual Fraud

As described above, fraudulent joinder can also be shown by clear and convincing evidence of "outright fraud" in the plaintiff's pleadings. *Pampillonia*, 138 F.3d at 461. The Court cannot find that GE has made such a showing.

The fraud inquiry is properly focused on whether a defendant "committed 'outright fraud' by naming [the party] as a defendant." *Nemazee v. Premier, Inc.*, 232 F. Supp. 2d 172, 178 (S.D.N.Y. 2002) (internal citation omitted). The Second Circuit has never defined the term "outright fraud" in this context. District courts within the Second Circuit have long held, however, that, joinder of a defendant may be fraudulent if the "assertion of the cause of action [against that defendant] is as a matter of local law plainly a sham and frivolous." *Harris Diamond Co. v. Army Times Pub. Co.*, 280 F. Supp. 273, 275 (S.D.N.Y. 1968) (examining whether the plaintiff had stated a non-frivolous claim against a diversity-destroying defendant); *see also In re Zyprexa Prods. Liability Litig.*, Nos. 04-MD-1596 (JBW), 08-CV-3249 (JBW), 2008 WL 4561628, at *3

---

[6] In support of their argument that Met Life is properly named here, Plaintiffs note that their counsel and Met Life have settled approximately 1,891 asbestos cases in Connecticut and Rhode Island. ECF No. 28-1 at 6, n.3. But while Plaintiffs' counsel and Met Life have significant litigation history in asbestos matters, the Court does not have before it evidence of collusion in those settlements, beyond innuendo and speculation. Further, there is no evidence in the record about the number of those cases, if any, that were removed to federal court, through which Plaintiffs could see the litigation strategy GE accuses Plaintiffs and Met Life of adopting specifically play out.

(E.D.N.Y. Oct. 10, 2008). Outright fraud may also be found when a plaintiff's pleading "contain[s] some false set of facts." *Gerbo v. Kmart Corp.*, No. 14-CV-4866 (MKB) (LB), 2015 WL 6691603, at *2 (E.D.N.Y. Nov. 3, 2015). In assessing whether there is fraudulent joinder, the Court "is permitted to look beyond the face of the complaint" to make its determination. *B.N. ex rel. Novick v. Bnei Levi, Inc.*, No. 12-CV-5057 (JG), 2013 WL 168698, at *3 (E.D.N.Y. Jan. 15, 2013) (citing *Pampillonia*, 138 F.3d at 461–62).

Here, Plaintiffs' complaint—while not a model of clarity and short on factual allegations—does not rise to the level of outright fraud. GE argues that "[b]y lumping together all defendants in nearly every allegation of the Complaint," Plaintiffs assert false claims that "[Met Life] is an asbestos product manufacturer, distributor, supplier, or retailer." ECF No. 41 at 13. GE has a point, given that it is undisputed that Met Life is an insurance company, and not obviously an asbestos product manufacturer, distributor, supplier, or retail. But Plaintiffs, for their part, have provided context for the generality of their claims, asserting that this has been the common state court practice for asbestos pleadings "for the last 40 years." Pls.' Reply, ECF No. 46 at 5. Plaintiffs contend that, historically, Met Life had been named in each count of an asbestos-litigation complaint, as well as in separate counts pertaining specifically to Met Life, based on an original model complaint used for these cases. *Id.* at 6; Model Compl., ECF No. 46-3 at 1–26. Further, Plaintiffs note that this pleading style has received "tacit or express judicial endorsement," as such complaints regularly proceed to settlement in state court. ECF No. 46 at 5. Thus, Plaintiffs have provided a conflicting, valid, purpose for this broad pleading method, apart from outright fraud. At this stage, "all factual and legal issues must be resolved in favor of the plaintiff."

*Pampillonia*, 138 F.3d at 461. Thus, given the alternative justification of historical practice, the Court cannot conclude that outright fraud exists in Plaintiffs' pleadings.[7]

      c. No Possible Claim

Alternatively, GE may assert improper joinder by demonstrating that Plaintiffs have no possible claim against Met Life. Because Plaintiffs' complaint, as currently drafted, fails to sufficiently allege even the possibility of any plausible claims against Met Life, the Court finds Met Life is improperly joined, and denies Plaintiffs' motion for remand on this basis.

A defendant may demonstrate improper joinder with "clear and convincing evidence . . . that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia*, 138 F.3d at 461. The "'no possibility' standard for improper joinder is similar to the Rule 11 standard for identifying instances of litigation abuse for which sanctions should be imposed," and "therefore turns not on how likely a claim is to succeed, but rather on whether the claim is objectively frivolous." *Soto*, 139 F. Supp. 3d. at 563. Thus, "'[a]ny possibility of a recovery, even if slim, militates against a finding of fraudulent joinder.'" *Ret. Program for Emp. of the Town of Fairfield v. NEPC, LLC*, 642 F. Supp. 2d 92, 95 (D. Conn. 2009) (likening the standard to a "more rigorous version of the 'failure to state a claim' standard expressed in Rule 12(b)(6)" and citing *Nemazee*, 232 F.Supp.2d at 178). While "various district courts in this circuit have interpreted the *Pampillonia* language in slightly varying ways," *Oliva v. Bristol-Myers Squibb Co.*, No. 3:05-CV-00486 (JCH), 2005 WL 3455121, at *2 (D. Conn. Dec. 16, 2005) (collecting cases), the majority appear to apply a true "no possibility"

---

[7] While Plaintiffs' complaint may be consistent with historical practices, the Court notes that federal pleading standards are governed by Federal Rule of Civil Procedure 11. Rule 11 specifies that "the claims, defenses, and other legal contentions" asserted in a complaint "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." It is not clear to the Court that, as written, Plaintiffs' state law complaint could survive this standard.

standard. *Id.*; *see also Zhaoyin Wang v. Beta Pharma, Inc.*, No. 3:14-CV-01790 (VLB), 2015 WL 5010713, at *5 (D. Conn. Aug. 24, 2015).

In evaluating whether the complaint can state a cause of action against the improperly joined defendant, courts apply the state, not federal, pleading standards. *See Pampillonia*, 138 F.3d at 461 ("the defendant must demonstrate . . . that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant *in state court*" (emphasis added)); *Fayet v. Target Corp.*, No. 20-CV-3191 (LTS) (KHP), 2021 WL 706332, at *5 (S.D.N.Y. Feb. 22, 2021) (in considering whether the no possibility standard has been met, "a district court must apply the law of the forum state, including the pleading standard of that state" (cleaned up)). "Connecticut employs a fact pleading standard rather than a notice pleading standard, and as such requires more detail in pleadings than the federal standard requires." *Wylie v. City of New Haven*, No. 3:02-CV-313 (PCD), 2003 WL 23498386, at *2 (D. Conn. Feb.27, 2003); *Bridgeport Harbour Place I, LLC v. Ganim*, 303 Conn. 205, 213 n.7 (2011) (noting that Connecticut is a "fact pleading state"); *Loubriel v. Global Help Desk Servs., Inc.*, No. HHD-CV21-6148568-S, 2024 WL 2828795, at *2–5 (Ct. Sup. Ct. May 29, 2024) ("Historically, the federal notice pleading standard has been viewed as more liberal, flexible, and relaxed than a fact pleading standard."); Connecticut Practice Book § 10-1 ("Each pleading shall contain a plain and concise statement of the material facts on which the pleader relies, but not of the evidence by which they are to be proved").

Here, all of Plaintiffs' state court claims suffer from the same fault: they fail to allege with sufficient particularity facts that establish a basis for the allegations against Met Life, under Connecticut's fact-pleading standard. The Court addresses each of Plaintiffs' claims in turn.

### i. Count One: CPLA

Plaintiffs' state court complaint alleges that Met Life has violated the CPLA. Connecticut's product liability statute provides a cause of action against product manufacturers for "harm caused by a product." Conn. Gen. Stat. § 52–572n(a). This includes all injuries caused by the defective "manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product." Conn. Gen. Stat. § 52–572m(b).

To be liable under the CPLA, a defendant must be a "product seller," which is defined under the statute to include "any person or entity, including a manufacturer, wholesaler, distributor or retailer who is engaged in the business of selling such products whether the sale is for resale or for use or consumption." Conn. Gen. Stat. § 52–572m(a). Plaintiffs appear to concede that Met Life is not a manufacturer, producer, or even a distributor of asbestos products. *See* ECF No. 28-1 at 7. Rather, Plaintiffs claim Met Life can still properly be considered a product seller based on its involvement in the "stream of commerce" for asbestos products.[8]

The Connecticut Supreme Court has examined whether involvement in the stream of commerce is sufficient to be considered a product seller under the statute, considering "whether the defendant derived substantial economic benefit from its activity, whether it took title to the product in the process of distribution, and the extent of its knowledge of and control over the product." *Oliva*, 2005 WL 3455121, at *4 (citing *Burkert v. Petrol Plus of Naugatuck, Inc.,* 216 Conn. 65, 68–69 (1990)).

---

[8] GE's argument that Plaintiffs raise their stream of commerce argument for the first time in their motion for remand, *see* ECF No. 41 at 17, is not entirely incorrect. Plaintiffs allege that Met Life (and the other Defendants) "marketed" asbestos products in their state court complaint, albeit in a conclusory fashion. ECF No. 1-1, ¶ 7. Plaintiffs elaborate on this theory in their motion to remand, arguing that "through false advertisements and the concealment of information, Met Life helped to market and keep asbestos products in the stream of commerce" long after its health risks were clear. ECF No. 28 at 7–8.

Plaintiffs' allegations in the state court complaint are insufficient to plausibly allege that Met Life is a "product seller," even under a stream of commerce theory. Plaintiffs merely allege that *all* defendants "packaged, supplied, distributed, delivered, marketed and/or sold" asbestos products, but provide no details whatsoever about when this occurred, what specific products were at issue, or which Defendant was responsible for which part of the supply chain. ECF No. 1-1 ¶ 7. Nor do Plaintiffs allege how Met Life is at all involved in allegedly causing Mrs. Tranquillo's injuries specifically. These conclusory, shotgun allegations do not rise to the level of a "plain and concise statement of the material facts" that a state court complaint must assert under the Connecticut pleading standard. *See* Conn. Practice Book § 10-1. And Plaintiffs' counsel admitted as much when pressed at oral argument. Tr., ECF No. 55 at 37 ("[t]here may be broadly generalized allegations . . . that maybe, you know, again in hindsight would have been flushed out more"). Notably, Plaintiffs have not requested leave to amend their complaint to supplement their allegations. Thus, the Court addresses only the allegations set forth in the present complaint, and must conclude that there is no possibility Plaintiffs could recover against Met Life under the CPLA, based on those allegations.

          *ii.*      Count Two: Recklessness

Plaintiffs' claim for recklessness against GE is likewise insufficiently particular.

"In order to recover in a tort case, the plaintiff must show that the defendant has breached a legal duty owed to him." *Sheiman v. Lafayette Bank & Tr. Co.*, 4 Conn. App. 39, 44 (1985). This duty of care "may stem from a contract, from a statute, or from circumstances under which a reasonable person would anticipate that harm of the general nature of that suffered was likely to result." *Id.* at 45.

17

Here, Plaintiffs have not pleaded any specific facts that establish a duty of care that runs from Met Life to Plaintiffs. While the state court complaint alleges that "the defendants" possessed knowledge of the danger that asbestos and asbestos products posed, *see* ECF No. 1-1, ¶ 28, Plaintiffs nowhere explain why Met Life would have owed them a duty to share this information. Thus, Plaintiffs' recklessness claim similarly fails under the fact-pleading standard Connecticut courts require.

Plaintiffs have also alleged a loss of consortium cause of action. ECF No. 1-1, ¶ 45. Loss of consortium "is not an independent cause of action, but is derivative and inextricably attached to the claim of the injured spouse." *Venterina v. Cummings & Lockwood*, 117 F. Supp. 2d 114, 122 (D. Conn. 1999). Because the Court finds that Mrs. Tranquillo has not established the possibility of either of her other claims as pleaded in the state court complaint, the loss of consortium claim brought by Mr. Tranquillo must fail as well.

Thus, the Court concludes that Plaintiffs have not sufficiently established the possibility of any of their claims, as pleaded in the state court complaint under Connecticut's fact-pleading standard. Although Plaintiffs contend that their counsel's numerous previous settlements with Met Life demonstrate their claims here are plausible, the Court cannot necessarily conclude that settlements indicate viable claims, as there are many reasons why litigants may choose to settle. Moreover, Federal Rule of Evidence 408 prohibits the use of settlements to prove the validity of a disputed claim. While the Rules of Evidence do not strictly apply here, the premise behind Rule 408 does: settlement of a claim does not necessarily prove its viability. Thus, Plaintiffs' reliance on past settlements to establish the possibility of their current claims is misplaced.

For these reasons, the Court denies Plaintiffs' motion to remand. Based on this holding, the Court need not reach GE's request for limited discovery on the issue of collusion.

C. <u>Attorneys' Fees</u>

Finally, Plaintiffs request attorneys' fees associated with the cost of litigating their motion to remand, based on GE's alleged lack of a good faith basis for removal of this action. ECF No. 28-1 at 8–9. Plaintiffs' request is denied.

A district court remanding an action to state court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Absent unusual circumstances, courts may only award attorneys' fees under Section 1447 when the removing party has no objectively reasonable basis for seeking removal. *See Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). "A basis for removal is 'objectively reasonable' if the removing party had a colorable argument that removal was proper." *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 407 (S.D.N.Y. 2014). "Objective reasonableness is evaluated based on the circumstances as of the time the case was removed," and "'if clearly established law d[oes] not foreclose a defendant's basis for removal, then a district court should not award attorneys' fees.'" *William v. Int'l Gun-A-Rama*, 416 Fed. App'x. 97, 99 (2d Cir. 2011) (summary order) (quoting *Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007)).

Here, even though there was a lack of unanimity in consent to removal, GE believed it had an objectively reasonable basis for removal regardless, because it alleged that Met Life was fraudulently joined. As at least one district court within the circuit had previously concluded that fraudulent joinder was an exception to the rule of unanimity, *see Sherman*, 528 F. Supp. 2d at 330, GE had a colorable argument that removal was proper. And the Court has now concluded GE was correct. Because GE's removal of this action was not foreclosed by clearly established law, Plaintiffs' request for attorneys' fees is denied.

## IV. CONCLUSION

For the reasons described above, Plaintiffs' motion to remand, ECF No. 28, is DENIED. The parties shall meet and confer pursuant to Rule 26(f) within thirty days of entry of this order. Additionally, Plaintiffs and Defendants shall file a joint Rule 26(f) report by April 20, 2026.

**SO ORDERED** at Hartford, Connecticut, this 5th day of March, 2026.

                               */s/ Sarala V. Nagala*
                               SARALA V. NAGALA
                               UNITED STATES DISTRICT JUDGE